# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN FITZGERALD KORSKO, | : | |
| | : | |
| Plaintiff, | : | No. 3:07cv1745 (MRK) |
| | : | |
| v. | : | |
| | : | |
| JESSI PIZARRO, ADAM ROSCOE, | : | |
| | : | |
| Defendants. | : | |

## RULING AND ORDER

In this 42 U.S.C. § 1983 action, Plaintiff John Fitzgerald Korsko alleges that Defendants Jessi Pizarro and Adam Roscoe – both Bridgeport Police Officers – falsely arrested him, used excessive and unreasonable force in making the false arrest, and subsequently deprived him of medical treatment. Pending before the Court is Mr. Korsko's Motion to Preclude the Testimony of Defendants' Expert Paul P. Possenti, P.A. [doc. # 66] pursuant to Rule 702 of the *Federal Rules of Evidence*. For the reasons set forth below, Mr. Korkso's Motion to Preclude is DENIED.

## I.

The Court assumes the parties' familiarity with the facts and factual allegations in this case, and only discusses them to the extent necessary for purposes of resolving the pending Motion to Preclude. According to Mr. Korsko, Officers Pizarro and Roscoe arrested him in Bridgeport on August 10, 2007. During the arrest, Officers Pizarro and Roscoe threw him into a fence, causing a gash across his lower chest; struck him with a flashlight, causing a gash across his right temple; stepped on his neck, left hand, and right leg, all causing cuts and bruises; and dragged him across a concrete sidewalk, also causing cuts and bruises. After the arrest, Officers Pizarro and Roscoe sent

1

Mr. Korsko to the State Trooper G Barracks in a prisoner transport van even though he needed medical assistance.  At the barracks, a State Trooper took photographs of Mr. Korko's injuries and sent Mr. Korsko in an ambulance to the Bridgeport Hospital for treatment.

Defendants intend to argue at trial that Mr. Korsko sustained the wounds, cuts, and bruises he alleges resulted from Defendants' use of force *before* he was arrested. To that end, Defendants have retained Paul P. Possenti, a Chief Surgical Physician Assistant who works in the trauma unit at Bridgeport Hospital, to testify as to his opinion regarding the approximate age of Mr. Korsko's wounds on the date in question.  Mr. Possenti did not examine Mr. Korsko on the date in question; instead, he proposes to state the approximate age of Mr. Korsko's wounds based solely on his examination of the photographs taken by the State Trooper.  It is Mr. Possenti's opinion that the wounds were at least 48 hours old at the time.  The basis of his opinion is as follows:

> Within minutes upon injury to the skin, platelets collect at the site of the injury and form a clot.  This is hemostatis and this clot is bright red in color. Inflammatory factors are immediately released which causes local vasoconstriction (blood vessels constrict) for 5 to 10 minutes. This also helps to stop bleeding.  After the initial vasoconstriction, then vasodilatation occurs.  Vasodilatation is a widening of blood vessels and is due primarily to histamine released from platelets and from other blood cells.  This vasodilation causes the area surrounding the injury to become red from the inflammatory cells.  The inflammatory phase begins immediately upon injury, and lasts from two to five days.  It is followed by the proliferative stage or regeneration phase and the surrounding redness dissipates.

> In the photograph of the left chest wound, the wound shows no evidence of an acute injury.  There is no fresh clot (this would be bright red), no inflammation around the wound, and eschar is present which signifies an older wound (greater than 48 hours). With regards to the other photographs provided to me, which includes right lower leg, right cheek and back wounds, these wounds have dark red, almost black appearance. These are scabs which are older than the inflammatory phase of healing, which puts them over 24 hours old.

> At times, there is a contusion which surrounds the site of injury.  As a contusion heals, it will undergo a series of color changes.  These changes are caused by the body metabolizing the blood cells which have collected in the skin.  The color of the

2

bruise is an approximate indication of the age of the bruise.

Day one – Initially the bruise will be red or slightly purple.
Day Two – the bruise becomes blue or dark purple.
Day Six – the bruise looks greenish.
Day Eight – the bruise will look yellow-light brown.

When examining the picture of the chest injury, the color of the area surrounding the scab is yellowish-light brown.  This would indicate that this injury is older than 24 hours.

In conclusion, as stated above, none of the injuries in the photographs are less than 24 hours old.  In fact, the characteristics of these wounds indicate that they are older than 48 hours.

Disclosure of Expert Witness, Ex. A to Pl.'s Mem. of Law in Supp. of Mot. to Preclude [doc.# 67-1] at 4-5.

## II.

The admissibility of expert testimony is governed by Rule 702 of the *Federal Rules of Evidence*.  Under Rule 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Rule 702 tasks this Court with the "gatekeeping role" of excluding unreliable expert testimony, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), and that role extends to all expert testimony based on "technical" or "other specialized" knowledge, not just to expert testimony based on "scientific" knowledge.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see* Fed.R.Evid. 702 advisory committee's note.

In ruling on a motion to preclude expert testimony pursuant to Rule 702, this Court must perform two distinct tasks.  First, the Court must ensure that the proffered testimony is not "directed solely to lay matters which a jury is capable of understanding and deciding without [an] expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir.2001); *see, e.g.*, *Master-Halco, Inc. v. Scillia, Dowling & Natarello, LLC*, No. 3:09cv1546 (MRK), 2010 WL 2978289, at *3 (D. Conn. Apr. 9, 2010).  The proffered "testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons . . . [and] advanced by the parties in their summations." *In re Zyprexa Products Liability Litigation*, 489 F. Supp. 2d 230, 283 (E.D.N.Y. 2007) (Weinstein, J.).  Second, if the Court determines that the proffered testimony would indeed be helpful to a jury, the Court must also "ensur[e] that . . . [the] testimony . . . rests on a reliable foundation and is relevant to the task at hand." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir.2007) (quotation marks omitted).

As to the second task, the Supreme Court has emphasized that the standard for reliability is a "flexible" standard.  *Kumho Tire Co.*, 526 U.S. at 141.  The Supreme Court has identified a number of factors – including testing, peer review, error rates, and acceptability in the relevant field – which may prove helpful in determining reliability.  *See Daubert*, 509 U.S. at 593-94.  However, those factors are not the only factors that this Court may consider, and this Court need only consider them "where they are reasonable measures of the reliability of expert testimony." *Kumho Tire Co.*, 526 U.S. at 152.  Whatever factors the Court considers to be reasonable measures of reliability, however, the Court "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).

Also as to the second task, this Court must consider whether proffered expert testimony is supported by good grounds "at each step" in the expert's analysis. *Id.* at 266 (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994)). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand. A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Amorgianos*, 303 F.3d at 267; *see Daubert*, 509 U.S. at 590. "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony. As the Supreme Court has explained, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Finally, "[a]s with any other relevant evidence, the court should exclude expert testimony [under Rule 403] if its prejudicial effect substantially outweighs its relevance." *Mulder*, 273 F.3d at 101; *see also Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (citation omitted); *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir.2005) ("[T]he Supreme Court, echoed by members of our own court, has noted the

uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations."). These limitations apply to all expert testimony, regardless of field or expertise, though of course the factors relevant to the admissibility inquiry will vary based on the nature of the proffered testimony. *See Kumho Tire Co.*, 526 U.S. at 141-42; *see also* Fed.R.Evid. 702 advisory committee's note ("While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

### III.

At the outset, it is worth noting that Mr. Korko does not challenge Mr. Possenti's credentials as a medical expert. Mr. Korsko has elected not to challenge Mr. Possenti's testimony on that basis for good reason: Mr. Possenti appears to be well-qualified to testify as a medical expert. Instead, Mr. Korsko argues: (1) that Mr. Possenti's proffered testimony will not be helpful to the jury at trial, *see* Pl.'s Mem. of Law in Supp. of Mot. to Preclude [doc. # 67] at 12-13; (2) that the photographs of Mr. Korkso are an incomplete basis for Mr. Possenti's proffered testimony, *see id.* at 7-12; (3) that the methods Mr. Possenti uses to determine the age of wounds are "entirely subjective" and "cannot be verified," *id.* at 4; and (4) that the probative value of Mr. Possenti's proffered testimony is substantially outweighed by the likelihood that it will unfairly prejudice, confuse, or mislead the jury at trial. *See id.* at 13. The Court considers each of those arguments in turn.

Mr. Korsko's first argument – that the proffered expert testimony regarding the photographs will not assist the jury – plainly lacks merit. According to Mr. Korsko, the proffered testimony is about the colors and levels and degrees of light and darkness that appear in the photographs –

matters which are well "within the understanding of the average juror." *Id.* at 12 (citing Fed. R. Evid. 701 advisory committee's note).  But Mr. Korsko apparently misunderstands the purpose of the proffered testimony.  Mr. Possenti's proffered testimony is not just about which colors, shades, and images appear in the photographs.  It is principally about what those colors, shades, and images indicate about the age of Mr. Korsko's wounds.  Like all humans, expert witnesses must base their opinions on data that can be perceived through the five senses – for example, visual images, *see, e.g.*, *Williams*, 506 F.3d at 160-62 (affirming district court's decision to allow testimony by a ballistics expert); or written or spoken language.  *See, e.g.*, *United States v. Levasseur*, 816 F.2d 37, 45 (2d Cir. 1987) (affirming district court's decision to allow testimony by an expert on the meaning of messages written in code).  The fact that members of a jury can perceive the same *sensory data* that an expert *interprets* surely does not render the expert's testimony unhelpful.

Mr. Korsko does not argue that ordinary jurors are capable of determining the ages of wounds based on their visual appearances.  However, the Court notes that it is most assuredly *not* within the understanding of the average juror that, for example, the fact that a bruise has a yellowish-brown color indicates that the bruise is more than eight days old, or that the fact that a wound is not surrounded by inflamed tissue indicates that the wound is more than two days old.  *See* Disclosure of Expert Witness, Ex. A to Pl.'s Mem. of Law in Supp. of Mot. to Preclude  [doc.# 67-1] at  4-5.  Without the aid of an expert like Mr. Possenti, the jurors would have to simply guess at the age of Mr. Korsko's injuries based on their own examination of the photographs.  Even if the jurors should ultimately decide *not* to credit Mr. Possenti's opinions about what colors and shades actually appear in the photographs, Mr. Possenti's testimony might still help jurors interpret the meaning of the colors and shades *they* believe appear in the photographs.

Mr. Korsko's second argument – that the photographs alone do not provide a sufficient basis for Mr. Possenti to form an opinion regarding the age of Mr. Korsko's wounds – presents a closer question. It is true that Mr. Possenti did not have an opportunity to examine Mr. Korsko in-person at the time when the photographs were taken, and it is also surely true that in-person examination would provide a *stronger* basis for the sort of opinion Mr. Possenti intends to express at trial. Such in-person examination is no longer possible, however. As Mr. Possenti's methods are based solely on the visible characteristics of wounds, the Court can only conclude that the photographs, which are the only existing depictions of the wounds taken at the time when they allegedly occurred, provide a sufficient basis for Mr. Possenti to form and express a sufficiently reliable opinion.

The Court notes, however, that the party offering the photographs into evidence must provide a foundation for doing so, and that Mr. Korsko is free to cross-examine Mr. Possenti regarding the clarity and reliability of the photographs. The photographs are not photographs of particularly high quality. It is possible that because of lighting conditions or photographic techniques, the photographs do not accurately depict the way that Mr. Korsko's wounds actually appeared at the time the photographs were taken. At Mr. Possenti's deposition, counsel for Mr. Korski dwelled on that possibility at length. *See, e.g.*, Dep. of Paul Possenti, Ex. B to Pl.'s Mem. of Law in Supp. of Mot. to Preclude [doc. # 67-2] at 40-49. At the deposition, Mr. Possenti candidly acknowledged that photographs are sometimes distorted, discolored, and/or out of focus; that he is not an expert on photography; and that he knows very little about the conditions under which the photographs were taken. *See id.* at 41, 49. Such acknowledgments may lead the jury to conclude that Mr. Possenti's opinion regarding the age of Mr. Korsko's wounds, based solely on his examination of the photographs, is wrong. That issue is properly left for the jury, rather than for the Court, to decide.

8

*See Daubert*, 509 U.S. at 596.

Mr. Korsko's third argument – that Mr. Possenti's methods are subjective and unverifiable – also lacks merit. On one level, of course, Mr. Possenti's opinion is "subjective." His opinion is based on *what he sees* in the photographs, and on *what he infers* from what he sees, informed by his medical training and experience. Under that definition of "subjectivity," however, *all* expert testimony is subjective. Mr. Possenti's proffered testimony is based on scientifically-testable observations about the time it takes for wounds and bruises to heal on the human body, and the ways that wounds and bruises appear while they are healing. It is not as if Mr. Possenti has merely pointed to one photograph and declared "this wound is 24-hours old" and pointed to another photograph and said "this wound is 48-hours old." Therefore, the Court rejects Mr. Korsko's argument that Mr. Possenti's testimony is unreliable, entirely subjective and cannot be verified.

Again, the Court notes that cross-examination at trial is the appropriate means for raising many of the arguments Mr. Korsko's makes in support of the pending Motion to Preclude. If Mr. Possenti has not already done so, he should provide counsel for Mr. Korsko with a list of any medical treatises or medical journal articles he has relied on as soon as possible. Mr. Korsko may be aware of *other* medical treatises or articles that contradict the written sources, training, and experience that Mr. Possenti relied on in forming his opinion, and may question Mr. Possenti at trial regarding that contradictory information. At this point, however, Mr. Korsko has not seriously questioned the accuracy of the timetable for wound healing that Mr. Possenti relied on in forming his opinion about the wounds depicted in the photographs.

Mr. Korsko's fourth and final argument – that the probative value of Mr. Possenti's proffered testimony is substantially outweighed by its tendency to prejudice, confuse, and mislead the jury –

similarly lacks merit.  Mr. Korsko presses that argument in passing and in a single paragraph.  He does not provide any specific support for that argument.  Even assuming that Mr. Possenti's testimony will have *some* prejudicial effect, the Court is unwilling to presume based on Mr. Korko's passing argument that such prejudicial effect will *substantially* outweigh the testimony's probative value.  The Court therefore rejects the argument.

### III.

In sum, the Court concludes that Mr.Possenti's proffered expert testimony regarding the photographs will be helpful to the jury; that Mr. Possenti's proffered testimony is sufficiently reliable; and that the probative value of Mr. Possenti's proffered testimony will not be substantially outweighed by its tendency to prejudice, confuse, or mislead the jury.  Mr. Korko's Motion to Preclude [doc. # 66] is therefore DENIED.  The Court reiterates that if Defendants have not already done so, they should provide Plaintiff's counsel with a list of all medical treatises and journal articles that Mr. Possenti consulted in forming his opinion in this case as soon as possible.


IT IS SO ORDERED,


/s/        Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **September 10, 2010**

10